IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PHILLIP BUGADO, JR., | ) | CIV. NO. 06-00310 DAE-BMK |
| | ) | |
| Petitioner, | ) | FINDING AND |
| | ) | RECOMMENDATION TO DENY |
| vs. | ) | PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| NEIL WAGATSUMA, Warden, | ) | |
| Kauai Correctional Facility, and THE | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF HAWAII, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

FINDING AND RECOMMENDATION TO DENY PETITION FOR WRIT OF
HABEAS CORPUS

Petitioner Phillip Bugado, Jr. ("Bugado") has petitioned this Court for

a writ of habeas corpus under 28 U.S.C. § 2254.  The Petition was referred to a

magistrate judge pursuant to Local Rule 72.5 and 28 U.S.C. § 636(a).  Respondents

filed an Answer to the Petition on October 24, 2006, and Bugado filed a Reply on

November 16, 2006.  After careful consideration of the Petition, the Answer, the

Reply, and the entire record before the Court, the Court FINDS that all claims in

the Petition are either actually or technically exhausted and that the three claims

which are not procedurally barred are without merit.  Accordingly, the Court

RECOMMENDS that the petition be DENIED in its entirety.

## BACKGROUND AND PROCEDURAL HISTORY

On April 11, 2001, a jury in the Circuit Court of the Second Circuit of the State of Hawaii ("Second Circuit") convicted Bugado of a number of offenses against his wife, Vicky Bugado ("Vicky"), namely, one count of Terroristic Threatening in the First Degree in violation of Hawaii Revised Statute ("H.R.S.") § 707-716(1)(d) (Count I), three counts of Abuse of Family or Household Member in violation of H.R.S. § 709-906 (Counts II, IV, and V), and Unlawful Imprisonment in the Second Degree in violation of H.R.S. § 707-722(1) (Count VI).  Bugado had previously pled no contest to Possession of a Firearm by Persons under Restraining Orders in violation of H.R.S. § 134-7.  The jury acquitted Bugado of Count III, which was an additional charge of Abuse of Family or Household Member.  Bugado was sentenced to five years for Count I, one year for Count II, one year for Count IV, one year for Count V, one year for Count VI, and one year for Count VII, to be served consecutively.

After his trial, Bugado acquired a new attorney and appealed his conviction to the Hawaii Supreme Court, where he argued (1) that the trial court erred in admitting certain hearsay testimony, (2) that the trial court abused its discretion by admitting testimony about Bugado's prior and subsequent bad acts, and (3) that Bugado's rights to due process and confrontation were violated by the

2

prosecuting attorney's improper rebuttal arguments. (Answer, Ex. U). On January 21, 2003, the Hawaii Supreme Court affirmed the judgment of the Second Circuit in a summary disposition order. (Answer, Ex. V.)

On January 8, 2004, represented by his present counsel, Bugado petitioned the Second Circuit to vacate, set aside, or correct its judgment under Rule 40 of the Hawaii Rules of Penal Procedure. Bugado argued that (1) he was given ineffective assistance of counsel; (2) his conviction was obtained by the failure of the prosecution to disclose evidence favorable to him; (3) his plea of no contest for Count VII was not voluntary; and (4) his convictions violated the protections against double jeopardy, and the Second Circuit was without jurisdiction over the abuse charges. The Second Circuit denied Bugado's Rule 40 petition without a hearing on July 26, 2004. It found that all four of these grounds had been procedurally defaulted by Bugado's failure to raise them on direct appeal, and even if they were not procedurally defaulted, they were without merit.

Bugado appealed this ruling, and on May 23, 2006, the Hawaii Supreme Court filed a summary disposition order affirming the Second Circuit's denial of his Rule 40 petition. The Hawaii Supreme Court explicitly agreed with the Second Circuit's procedural default analysis with respect to seven of the ten

distinct claims comprising Bugado's ineffective assistance of counsel ground.[1]

The Hawaii Supreme Court then rejected on the merits the three remaining

ineffective assistance of counsel claims, as well as the three independent grounds

Bugado had asserted.

On June 5, 2006, Bugado filed the present Petition for habeas corpus

relief under 28 U.S.C. § 2254.  Bugado did not file any new memorandum in

support of the Petition, but instead relies on his original Rule 40 petition, which he

incorporates by reference.  Based on Bugado's Petition and all of the documents

before it, the Court determines that Bugado has asserted the following grounds for

relief.[2]

> Ground 1: Ineffective assistance of trial counsel; specifically,
> (1)    failure to subpoena abuse reports filed with the Maui Police
>        Department by Vicky Bugado in 1995;

---

[1]Bugado asserts seven ineffective assistance of counsel claims in his Rule 40 Petition, but does not number or letter them.  In his Opening Brief to the Hawaii Supreme Court appealing the denial of his Rule 40 Petition, Bugado labels the ineffective assistance of counsel claims as (a)-(g).  In its summary disposition order, the Hawaii Supreme Court numbered these claims, and re-categorized certain arguments Bugado makes in support of his other grounds for relief as additional ineffective assistance of counsel claims.

[2]These total 14 distinct claims.  The manner in which they are listed above largely reflects the Hawaii Supreme Court's separation of the claims based on Bugado's Rule 40 petition.  The principal difference between the Hawaii Supreme Court's classification and this Court's classification is that what the Hawaii Supreme Court termed Ground 3 is listed here as Ground 2, and the Hawaii Supreme Court termed Ground 2 is here listed as Ground 3.  These changes reflect the order in which Bugado listed the claims in his habeas petition before this Court.  Bugado has not objected to the Hawaii Supreme Court's classification of his sub-claims, so this Court assumes that it adequately captures Bugado's intent.

(2)    failure to subpoena relevant witnesses regarding the alleged 1995 abuse;

(3)    failure to subpoena reports that Vicky Bugado was involved in theft and forgery;

(4)    failure to hire a handwriting expert to support evidence of forgery and theft by Vicky Bugado;

(5)    failure to interview witnesses presented by the State;

(6)    failure to elicit evidence of "prior bad acts" by Vicky Bugado;

(7)    failure to subpoena Vicky Bugado's ex-parte petition for a temporary restraining order following the March 6, 2000 abuse incident;

(8)    failure to move to dismiss the charge of Possession of Firearm by Persons Under Restraining Orders on the grounds that the grand jury did not have enough evidence before it to determine that probable cause existed;

(9)    failure to cross examine certain witnesses; and,

(10)   failure to present certain exculpatory witnesses and evidence.

Ground 2: Bugado's plea of 'No Contest' to Count VII was not voluntarily or knowingly or intelligently made.

Ground 3: The prosecution failed to disclose exculpatory evidence.

Ground 4: Bugado's convictions were obtained (1) in violation of double jeopardy, and (2) in a court that lacked jurisdiction over the matter.

## LEGAL STANDARD

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may only grant a state prisoner's petition for habeas corpus where the state court's judgment "(1) resulted in a decision that was contrary to, or involved the unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision

5

that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Before a petitioner may bring a habeas petition to federal court, however, all of the claims raised must be exhausted in state courts.  28 U.S.C. § 2254(b)(1)(A); Picard v. Connor, 404 U.S. 270, 275 (1971).  To exhaust them, a petitioner must present his claims to the highest state court to give that court a fair opportunity to rule on the merits of each and every issue sought to be raised in federal court.  See O'Sullivan v. Boerckel, 526 U.S. 838, 839-40 (1999); Granberry v. Greer, 481 U.S. 129, 133-34 (1987); Galvan v. Alaska Dep't of Corr., 397 F.3d 1198, 1201-02 (9th Cir. 2005).  A petitioner may present his claims either on direct appeal or in state collateral proceedings.  See Turner v. Compoy, 827 F.2d 526, 528 (9th Cir. 1987).  There are two ways that exhaustion may be accomplished: (1) by actual exhaustion, and (2) by technical exhaustion.

First, a  petitioner may *actually* exhaust his claims by presenting them in a proper procedural manner to the state courts.  To fully exhaust federal claims in the state court, petitioners must "fairly present" them.  Baldwin v. Reese, 541 U.S. 27, 29 (2004); Fields v. Waddington, 401 F.3d 1018, 1020 (9th Cir. 2005); Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000) as modified by 247 F.3d 904 (9th Cir. 2001).  A petitioner must make the federal basis of his claim explicit, either by

referring to specific provisions of the federal constitutions or statutes, or citing federal case law.  Lyons, 232 F.3d at 668, 670.  This "give[s] the State the opportunity to pass upon and correct alleged violations of its prisoner's federal rights" before the prisoners bring their complaints to federal court.  Duncan, 513 U.S. at 365.

Moreover, a prisoner must "'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  Baldwin, 541 U.S. at 27-28 (internal quotation marks and citations omitted); see also Casey v. Moore, 386 F.3d 896, 915-16 (9th Cir. 2004), cert. denied, 545 U.S. 1146 (2005) (holding that a state prisoner had not exhausted his claims by presenting them for the first and only time in a petition for discretionary review with the state's highest court); Orthberg v. Moody, 961 F.2d 135, 137 (9th Cir. 1991) (holding that a petition was properly dismissed because five of six claims were not presented at every level of direct review).

Second, a petitioner can also *technically* exhaust state remedies by either showing that the state court explicitly denied a claim on procedural grounds, or, if the claim was never presented to the state courts, that no state remedies remain available.  Cassett v. Stewart, 406 F.3d 614, 621 n.5 (9th Cir. 2005) cert. denied,

Schriro v. Cassett, 126 S.Ct. 1336 (2006). When a state court finds that a claim is procedurally barred, that claim is effectively exhausted because "no state remedies remain available." Kellotat v. Cupp, 719 F.2d 1027, 1029 (9th Cir. 1983).

Once all of the claims in a federal habeas petition have been either actually or technically exhausted, the court may determine the merits of those claims. However, when a petitioner defaults his federal claim in state court pursuant to an "independent and adequate" state rule, federal habeas review on the merits is barred. Coleman v. Thomson, 501 U.S. 725, 729 (1991); Wainwright v. Sykes, 433 U.S. 72, 81, 87 (1977). Review on the merits is not barred only if the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in the fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Murray v. Carrier, 477 U.S. 478, 486 (1986).

To establish cause, a petitioner must establish that "some objective factor external to the defense impeded [his efforts] to comply with the State's procedural rule." Carrier, 477 U.S. at 488-89. Prejudice is shown by demonstrating that the alleged constitutional violation "worked to [a petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). If a petitioner fails

to establish cause for his procedural default, the court need not consider whether the petitioner has shown actual prejudice resulting from the alleged constitutional violations.  Smith v. Murray, 477 U.S. 527, 533 (1986).

DISCUSSION

## I. EXHAUSTION

### A.  Bugado's Actually Exhausted Claims

Bugado has actually exhausted three of his fourteen total claims: Claim 5 of Ground 1, ineffective assistance of counsel because of failure to interview witnesses; Ground 3, the prosecution's failure to disclose exculpatory evidence; and Part 1 of Ground 4, that Bugado's convictions were obtained in violation of double jeopardy.  Bugado fairly presented all three of these claims in state court by invoking federal law at both the trial level and the appellate level.

First, Bugado fairly presented in state court his claim that his defense counsel's failure to interview certain witnesses constituted ineffective assistance of counsel.  In his Rule 40 petition, Bugado cited to Avila v. Galaza, 297 F.3d 911 (9th Cir. 2002) (directing the district court to issue a writ of habeas corpus where the defendant's attorney "failed to investigate and introduce evidence that would have raised a reasonable doubt about [the prisoner]'s guilt").  (Pet. Ex. C, 4.)  Bugado points to certain witnesses that were not interviewed by his defense counsel.

9

Although Bugado does not explicitly state that he was actually prejudiced by this failure under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), <u>Avila</u> does cite to <u>Strickland</u>.  Thus, the Court assumes that with respect to this particular ineffective assistance of counsel claim, Bugado did in fact fairly present a federal claim.[3]

Second, with respect to his Ground 3 claim, Bugado asserted in state court that the prosecution's failure to disclose an audio tape of Lt. Asami answering questions violated Bugado's due process rights under the Fifth and Fourteenth Amendments, as interpreted by <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985) (holding that the government's "suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial").  (Pet. Ex. C, 13).

Third, with respect to the first part of his Ground 4 claim, Bugado argued in state court that the abuse of his wife was a single continuing course of conduct that was divided into more than one count in violation of the Double Jeopardy clause of the Fifth Amendment, as interpreted in <u>United States v. UCO Oil Co.</u>, 546 F.2d 833, 835 (9th Cir. 1976) (stating that "an indictment may not charge a single offense in several counts") and <u>United States v. Jewell</u>, 827 F.2d 586, 588

---

[3]In the alternative, if Bugado's discussion of <u>Avila</u> without citing to <u>Strickland</u> or stating the federal standard of actual prejudice is not sufficient to fairly present his failure to interview claim, then this claim would still be technically exhausted because Bugado would be procedurally barred from returning to state court to present a federal variation of his already-presented state law version of the claim.

(9th Cir. 1987) (noting the consistent treatment of "a series of actions taken by a defendant in a particular matter as a single instance of participation in the matter").

Accordingly, all three of these claims–Claim 5 of Ground 1, Ground 3, and Part 1 of Ground 4–were fairly presented in state court and are actually exhausted.

    B.  <u>Bugado's Technically Exhausted Claims</u>

Bugado has technically exhausted those claims which he has not actually exhausted.  These technically exhausted claims fall into two categories: (1) those claims which cite to federal law, but whose underlying issues were explicitly determined to be procedurally defaulted by the Hawaii Supreme Court; and, (2) those claims which do not cite to federal law, but which Bugado could not now raise in state court if he were to return there because the state court would deem them procedurally defaulted under independent and adequate state procedural rules.

    1.  <u>Claims Explicitly Determined to Have Been Procedurally Defaulted</u>

Seven of Bugado's claims are technically exhausted because the Hawaii Supreme Court explicitly determined that Bugado had waived the underlying issues by failing to raise them on direct appeal.  Specifically, the Hawaii Supreme Court determined that Bugado had waived the ineffective assistance of counsel arguments underlying Claims 1, 2, 3, 4, 6, 8, and 9 of his Ground 1.  (Pet. Ex. C, at 6 (concluding that "sub-issues (1), (2), (3), (4), (6), (8) and (9) of the first

11

ground of Bugado's petition were waived").)   In Hawaii, when an issue is not raised

on appeal, a petitioner is procedurally barred from later raising it in Rule 40

collateral review proceedings.   See Haw. Rule Penal Proc. 40(a)(3); Matsuo v.

State, 70 Haw. 573, 577 (1989).  When a state court finds that a claim is

procedurally barred, that claim is effectively exhausted because "no state remedies

remain available."  Kellotat v. Cupp, 719 F.2d 1027, 1029 (9th Cir. 1983).  Thus,

these seven ineffective assistance of counsel claims have been technically exhausted

by Bugado's failure to raise the underlying issues on direct appeal.

### 2.  Claims that are Implicitly Procedurally Defaulted

The remaining four of Bugado's claims are also technically exhausted

because he failed to present them to the Hawaii state courts as federal claims when

he had the opportunity, and so would now be barred from raising them in a

subsequent state court proceeding.  These implicitly defaulted claims are: (1) his

two remaining ineffective assistance of counsel claims, Claims 7 and 10 of Ground

1, (2) his Ground 2 claim that his plea of 'No Contest' to Count VII was not

voluntarily or intelligently made, and (3) the second part of his Ground 4 claim that

the trial court lacked jurisdiction over him with respect to some of the charges.

Where a petitioner has "failed to present his claims in state court and can no longer

raise them through any state procedure, state remedies are no longer available and

are exhausted." Rivas v. Schriro, No. CV-05-434-PHX-DGC (BPV), 2006 WL

987990, at *8 (D. Ariz., April 13, 2006) (citations omitted).  Thus, a "procedural

default may be *caused* by a failure to exhaust federal claims in state court."

Sandgathe v. Maass, 314 F.3d 371, 376 (9th Cir. 2002) (emphasis in original).

   First, Bugado did not present a federal claim in asserting Claims 7 and

10 of his Ground 1, that he received ineffective assistance of counsel because of his

defense counsel's failure to subpoena Vicky Bugado's ex-parte petition for a

temporary restraining order following the March 6, 2000 abuse incident, and failure

to present certain exculpatory witnesses and evidence.  In his Rule 40 petition,

Bugado cites only to state law, not federal law, in describing the general standard by

which all of his ineffective assistance of counsel claims should be judged.  In fact,

Bugado even highlights his reliance on state law, emphasizing in italics that "no

showing of actual prejudice is required to prove ineffective assistance of counsel"

under state law.  (Pet. Ex. A, 5 (quoting State v. Fukusaku, 81 Hawaii 462, 479

(1997).)  The only federal case Bugado cites to in support of his ineffective

assistance of counsel claims is Avila, which, as mentioned above, deals specifically

with failure to interview witnesses.  Citing to Avila alone, however, is insufficient

to fairly present Bugado's other two ineffective assistance of counsel claims,

particularly given his emphasis of the state standard and his complete failure to

mention the federal standard of <u>Strickland</u>.  <u>See</u> <u>Lyons v. Crawford</u>, 232 F.3d 666,

668-60 (9th Cir. 2000) (a simple reference to ineffective assistance of counsel is not

sufficient to fairly present a federal claim under the Sixth Amendment); <u>Kelly v.</u>

<u>Small</u>, 315 F.3d 1063, 1066 (9th Cir. 2003) (requiring that a petitioner state the

federal legal theory on which the claim is based).

Second, Bugado similarly failed to fairly present his Ground 2 claim

that his plea of 'No Contest' to Count VII was not voluntarily or intelligently made.

Bugado cites only to state law in support of this claim, and does not specify what

federal rights, if any were violated.

Third, Bugado also failed to fairly present the second part of his

Ground 4 claim that the trial court lacked jurisdiction over him with respect to some

of the charges.  Once again, he cites to no federal law in support of this argument.

Although Bugado never fairly presented these four claims to Hawaii

state courts as federal claims, he will be procedurally prevented under Hawaii law

from returning to state court to raise them now.  Under Hawaii law, state prisoners

are precluded from obtaining post-conviction relief on issues they have "knowingly

and understandingly" waived by failing to raise before trial, at trial, on appeal, or by

any other means, and there are no "extraordinary circumstances" justifying the

failure to raise the issue.  Haw. Rule Penal P. 40(a)(3).  Here, Bugado raised

analogous state-law claims on these issues in his Rule 40 petition, but failed to raise related federal claims.  This constitutes a knowing waiver of his federal claims, and would procedurally bar a subsequent Rule 40 petition by Bugado.  Thus, these four claims that would be deemed procedurally defaulted pursuant to an independent and adequate state rule are technically exhausted, and Bugado has actually or technically exhausted all fourteen of his claims.

## II.  PROCEDURALLY BARRED CLAIMS

Federal courts are procedurally barred from reviewing petitioners' claims on the merits where a petitioner defaults his federal claim in state court pursuant to an "independent and adequate" state rule.  Coleman, 501 U.S. at 729-30. One such state procedural rule is Hawaii's Rule 40(a)(3), which bars prisoners from filing petitions for post-conviction relief where the issue was "knowingly and understandingly" waived by the failure to raise it before trial, at trial, on appeal, or by any other means, and there are no "extraordinary circumstances" justifying the failure to raise the issue.  Haw. Rule Penal P. 40(a)(3).  Rule 40(a)(3) is an independent and adequate ground sufficient to support a finding of procedural default.  Cockett v. Ray, 333 F.3d 938, 943 (9th Cir. 2003).

Such defaulted claims will only be reviewed on the merits where the prisoner can demonstrate cause for the procedural default and actual prejudice, or

15

demonstrate that the failure to consider the claims will result in the fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Murray v. Carrier, 477 U.S. 478, 485 (1986). To establish cause, a petitioner must establish that "some objective factor external to the defense impeded [his efforts] to comply with the State's procedural rule." Carrier, 477 U.S. at 488-89. Prejudice is proved by demonstrating that the alleged constitutional violation "worked to [a petitioner's] actual and substantive disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). If a petitioner fails to establish cause for his procedural default, the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations. Smith v. Murray, 477 U.S. 527, 533 (1986).

Here, the Court is procedurally barred from addressing the merits of those eleven claims which the state courts have deemed, or would deem procedurally defaulted. These eleven claims are Claims 1, 2, 3, 4, 6, 7, 8, 9, and 10 of Ground 1, Ground 3, and the second part of Ground 4. Seven of these eleven claims were explicitly held to be procedurally defaulted by the Hawaii Supreme Court; the other four claims were not raised as federal claims by Bugado, but would be deemed procedurally defaulted because he failed to raise them when he raised his analagous state-law claims. There are no extraordinary circumstances justifying

16

Bugado's failure to raise these claims, and so all eleven of these claims must be considered defaulted by Bugado pursuant to an independent and adequate state court rule.  Moreover, Bugado has failed to show, or even to argue that there was cause for his failure to comply with the state court procedural rules or that failure to consider these claims will result in a fundamental miscarriage of justice.  The Court is therefore barred from addressing these eleven claims on the merits.

III.  THE MERITS OF BUGADO'S NON-BARRED CLAIMS

In addressing claims that are not barred, a federal court may only grant a state prisoner's petition for habeas corpus where the state court's judgment "(1) resulted in a decision that was contrary to, or involved the unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Here, Bugado has asserted three claims which are not procedurally barred: Claim 5 of Ground 1, Ground 2, and the first part of Ground 4.  The Court FINDS that the state court decisions on these claims were neither contrary to clearly established law nor based on an unreasonable determination of the facts.  Therefore, the Court RECOMMENDS that Bugado's habeas petition be DENIED.

17

A.  <u>Ground One, Claim 5: Ineffective Assistance of Counsel for Failure to Interview</u>

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel.  <u>Strickland</u>, 466 U.S. at 686.  This right is violated where "counsel's representation [falls] below an objective standard of reasonableness," <u>id.</u> at 688, and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, <u>id.</u> at 694.  To prevail on an ineffective assistance of counsel claim, the defendant must show (1) "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment, and (2) that this deficient performance actually prejudiced the defense.  <u>Id.</u> at 687.

The failure to adequately interview witnesses can constitute deficient performance by defense counsel.  <u>Avila</u>, 297 F.3d 911, 919 (9th Cir. 2002) (finding deficient performance where there was clear and convincing evidence that a lack of pre-trial investigation kept the defense counsel from introducing evidence at trial that the real shooter was the defendant's brother); <u>Lord v. Wood</u>, 184 F.3d 1083, 1096 (9th Cir. 1999) (finding deficient and prejudicial performance where the attorney failed to interview three witnesses who would have testified to seeing the victim alive after the defendant was supposed to have killed her).

18

Here, Bugado claims that his trial counsel's failure to interview prosecution witnesses Barbara Pagay, Lt. Duane Asami, Ruth Balderas, and Steve Kaneshiro constituted ineffective assistance of counsel under <u>Avila</u>.

1. <u>Barbara Pagay</u>

Barbara Pagay testified at trial that on February 25, 2000, Bugado had a domestic argument with his wife Vicky at the credit union where she worked, and that Bugado had to be escorted from the premises by uniformed police.  She testified that Bugado was wearing a fanny pack that day which she knew contained a firearm.  Pagay also testifed that on March 7, 2000, she observed injuries on Vicky's neck, wrist, and head.

Bugado claims that if interviewed, Pagay could have (1) testified to the respective characters of Bugado and Vicky, (2) clarified that she did not see Bugado's firearm on February 25, but rather that he had showed it to her on a previous occasion, (3) disclosed that Vicky appeared to be having an intimate affair with another man, and that Bugado believed this to be the case, and (4) stated that Vicky had never told her of any incident in which Bugado threatened her with a firearm.

Bugado fails to specify how this additional testimony would have helped to cast doubt on Bugado's guilt.  It seems unlikely that any character

testimony about Bugado by Pagay, Vicky's friend, would have been helpful to Bugado.  Similarly, clarifying the source of her knowledge about Bugado's firearm would have had little impact on the issue of whether Bugado had a weapon with which threaten Vicky.  While testimony about Vicky's alleged intimate affair may have somewhat diminished Vicky's credibility, it would also have provided Bugado with greater motive, making it more likely for the jury to find him guilty.  Finally, it is difficult to see how testimony of the absence of  prior consistent acts would have cast doubt on Bugado's guilt for this particular act.

The testimony Pagay would have offered at trial if she had been interviewed is not the sort of exculpatory testimony that would have been offered by the witnesses in <u>Avila</u> and <u>Lord</u>.  The Court FINDS that the failure of Bugado's counsel to interview Pagay did not prejudice his defense.

### 2. Lt. Duane Asami

Lt. Duane Asami, now retired, testified at trial that he met with Vicky Bugado in his police vehicle the evening of March 6, 2000.  He testified that he did not see any injuries on her at the time, nor did she complain of any physical abuse at that time.  Bugado complains that if his defense counsel had adequately interviewed Asami, the counsel would also have discovered the existence of an audio recording from the prosecution's interview with Asami, and that this audio recording would

have corroborated Asami's in-court testimony that Vicky did not tell him of any

physical abuse on the evening of March 6.  Because it does not appear that Asami's

testimony was impeached by the prosecution, however, his prior consistent

statement, even if admitted into evidence, would not have had any significant

impact on the trial.  The Court therefore FINDS that the failure of Bugado's counsel

to obtain information about the audio recording was not prejudicial to Bugado's

defense.

        3. <u>Ruth Balderas</u>

        Ruth Balderas testified at trial that she observed a bruise on Vicky's

neck and that Vicky appeared upset, worried, and scared.  Defense counsel did not

cross-examine Balderas.  However, Bugado does not now present any information

regarding what Balderas might have revealed or testified to if cross-examined.  In

the absence of such information, the Court FINDS that Bugado's defense was not

prejudiced by his counsel's failure to interview Balderas.

        4. <u>Steve Kaneshiro</u>[4]

---

[4]In affirming the denial of his Rule 40 petition, the Hawaii Supreme Court addresses the failure to call Steve Kaneshiro under Claim 10 of Bugado's Ground 1, ineffective assistance of counsel by failing to present exculpatory witnesses and evidence.  Here, the Court is procedurally barred from addressing Claim 10 because the Hawaii Supreme Court would deem it to have been waived.  Bugado does, however, specifically mention his trial counsel's failure to interview Kaneshiro in his Rule 40 petition.  Although Bugado did not object to the Hawaii Supreme Court's classification of his claims or try to re-classify them in any way in his habeas petition, the Court will assume out of an abundance of caution that Bugado intended his

21

Steve Kaneshiro was a pastor who counseled Bugado regarding his behavior and his relationship with his wife.  He states that when he first began counseling Bugado in 1995, Bugado displayed "behavior that was detrimental to his marriage" and "was having an extra marital affair and was treating his wife, Victoria in a very poor manner."  (Pet. Ex. A, Statement of Stephen Kaneshiro.)  Bugado lived in Kaneshiro's house before and during his trial, and Kaneshiro would have testified to Bugado's good character.  He was briefly interviewed by an investigator for Bugado's trial counsel.

While this interview was allegedly quite brief, neither Bugado nor Kaneshiro suggest that a longer interview with Kaneshiro would have identified any additional information or testimony.  The Court FINDS that the short interview of Kaneshiro did not prejudice Bugado in any way.  The decision not to call Kaneshiro was not based on the failure of Bugado's trial counsel to obtain certain information from Kaneshiro, but rather appears to have been based on the strategic decision that Kaneshiro's mixed testimony would have been more injurious than helpful.

---

ineffective assistance of counsel for failure to interview claim to apply to Kaneshiro in addition to Pagay, Asami, and Balderas.

B.  <u>Ground Two: Prosecution's Failure to Disclose Exculpatory Evidence</u>

Bugado's second ground for relief is the prosecution's failure to disclose allegedly exculpatory evidence before trial, namely, an audio recording of Lt. Asami that supports the testimony he gave at trial.  A defendant's due process rights are violated when the prosecution suppresses evidence favorable to the defendant that is material as to either guilt or punishment.  <u>Brady v. Maryland</u>, 273 U.S. 83, 87 (1963).  Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985).

Here, Lt. Asami was questioned by the prosecuting attorney before trial, and an audio recording made of the interview.  Asami claims that during this interview, he repeatedly stated that "[Vicky] did not make any such claims [of abuse] and physical evidence of injuries was not present."  (Pet. Ex. A, Statement of Duane Asami.)  This is precisely what Lt. Asami testified to at trial when cross-examined by defense counsel.  (<u>See</u> Answer, Ex. L, at 120.)

Bugado claims that the disclosure and admission into evidence of this audio recording would have bolstered Lt. Asami's testimony.  The audio recording adds nothing to Lt. Asami's in-court testimony, however, and Bugado does not show that this tape was even within the prosecution's direct control.  Moreover, Lt.

23

Asami's testimony was never directly contradicted or impeached.  For these

reasons, the Court FINDS that there was no reasonable probability that the result of

the proceeding would have been different if the audio recording had been disclosed

to the defense.

     C.  <u>Ground Four: Double Jeopardy</u>

        Bugado's fourth ground for relief alleges, in part, that Bugado's

conviction violates the Fifth Amendment's protection against any person being

"twice put in jeopardy of life or limb" for the same offense.  U.S. Const., amend V.

The Double Jeopardy clause is violated where a court imposes multiple

punishments for a single offense, as that offense has been defined by the legislature.

<u>Brown v. Ohio</u>, 432 U.S. 161, 166 (1977).  The Double Jeopardy clause is not

violated where a person is convicted of two separate offenses, each of which

requires an element not required by the other offense.  <u>Blockburger v. United States</u>,

284 U.S. 299 (1932).

        Here, Bugado makes two double jeopardy arguments.  First, Bugado

argues that "the unlawful imprisonment charge is [] an included offense of the

abuse of household member charge . . . ."  (Pet. Ex. A, 19.)  This is not the case.

Unlawful imprisonment in the second degree requires a person to "knowingly

restrain[] another person,"  H.R.S. § 707-722(1), while abuse of a household

24

member makes it unlawful "for any person, singly or in concert, to physically abuse a family or household member . . ." H.R.S. § 709-906.  These offenses each require elements not required by the other offense.[5]   Thus, the Hawaii legislature has defined these as separate offenses and under <u>Blockburger</u>, Bugado's conviction under both statutes does not constitute double jeopardy.

Second, Bugado argues that the conduct underlying his five convictions can only support his conviction for a single offense because he was engaging in a continuing course of conduct that constituted only a single act. Bugado argues that dividing a single criminal act into multiple charges violates the Double Jeopardy clause.  In support of this proposition, Bugado cites to <u>Bell v. United States</u>, 349 U.S. 81 (1955), which held that a defendant who carried two women across state lines in one single act could not be cumulatively punished for two separate violations of the Mann Act.

Bugado does not disagree that evidence was introduced at trial showing separate acts of abuse, imprisonment and threatening.  He only argues that "[b]y the prosecutor attorney's own admissions, Petitioner engaged in a continuous

---

[5] <u>See</u> <u>State v. Lessary</u>, 75 Haw. 446, 452 n.8 (1994) ("Abuse requires proof of physical abuse; Unlawful Imprisonment and Terroristic Threatening do not.  Unlawful imprisonment requires proof of restraint, Abuse and Terroristic Threatening do not. . . . Thus, Abuse [and] Unlawful Imprisonment . . . are . . .  'different' offenses under the double jeopardy clause of the United States Constitution.").

25

course of conduct, and should not have been over charged as he was." (Pet. Ex. A, 18.) Bugado cites the following exchange from March 27, 2000, as proof of this alleged admission:

> THE COURT: You are saying this was an ongoing course of conduct this entire period of time?

> MS. MENDES: Yes, your Honor.  That's exactly what I am saying . . . ."

(Ans. Ex. J, 23.) Bugado has taken this exchange entirely out of context, however. It is quite obvious from the transcript that the "course of conduct" referred to here is not Bugado's violent acts towards Vicky, but Bugado's unfaithfulness to his wife.[6]

Bugado makes no independent argument as to why this conduct should be viewed as a single course of conduct.  The Court therefore FINDS that Bugado's trial did not violate the Double Jeopardy clause.

## CONCLUSION

For the foregoing Reasons, the Court hereby FINDS: (1) that all fourteen of Bugado's claims have been actually or technically exhausted; (2) that

---

[6]The conversation begins on page 20 of the March 27, 2000 trial transcript, where Ms. Mendes requests that "his being unfaithful to his wife should not be considered a bad act . . . ." (Ans. Ex. J, 20.) Bugado's trial counsel then requests that if this evidence is to be admitted, "they should come up with specific dates and times and locations when this happened, and where it happened." (Ans. Ex. J, 22.) It is in response to this request for Bugado's trial counsel that Ms. Mendes attempted to frame Bugado's unfaithfulness as a single course of conduct, rather than isolated instances.

26

the Court is procedurally barred by an independent and adequate state rule from addressing eleven of these claims, namely, Claims 1, 2, 3, 4, 6, 7, 8, 9, and 10 of Ground 1, Ground 3, and the second part of Ground 4; and, (3) that Bugado's three remaining claims are without merit.  Accordingly, the Court hereby RECOMMENDS that Bugado's petition for habeas corpus be DISMISSED.

IT IS SO FOUND AND RECOMMENDED.



/s/ Barry M. Kurren
United States Magistrate Judge
 Dated: June 25, 2007

Bugado v. Wagatsuma; FINDING AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS; Civ. No. 06-00310 DAE-BMK.